IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-352-FL

| | |
|---|---|
| MARTHA L. YATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Martha Yates ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

[DE #17] be granted, Defendant's Motion for Judgment on the Pleadings be denied [DE #19], and the Commissioner's decision be remanded for further proceedings.

## STATEMENT OF THE CASE

Plaintiff protectively applied for DIB and SSI on November 14, 2012, with an alleged onset date of October 2, 2009.[2] (R. 24, 161–62, 350–60.) These applications were denied initially and upon reconsideration and a request for hearing was filed. (R. 161–62, 191–92, 242–43.). A hearing was held on January 28, 2015, before Administrative Law Judge ("ALJ") Carl B. Watson, who issued an unfavorable ruling on May 1, 2015. (R. 24–37.) The Appeals Council denied Plaintiff's request for review on September 9, 2016. (R. 2–4.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389,

---

[2] Plaintiff subsequently amended the onset date to March 1, 2011. (R. 24.)

401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the

Commissioner to show that other work exists in the national economy that the claimant can perform. (*Id.*)

III. **ALJ's Findings**

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 1, 2011, the alleged onset date. (R. 26.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease, diabetes mellitus, obesity, hypothyroidism, bilateral wrist median neuropathy, depression, and anxiety." (*Id.*) The ALJ found Plaintiff's restless leg syndrome to be a non-severe impairment. (R. 27.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27.) The ALJ analyzed Listings 1.02, 1.04, 9.00, 11.01, 12.04, and 12.06. (R. 27–28.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform light work (described as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk for 6 hours in an 8-hour workday) except that she cannot climb ladders, ropes, or scaffolds; she can perform frequent but not constant handling and fingering bilaterally; she must avoid working at unprotected heights; she must work in an environment where there is no interaction with the general public; and she can work in proximity to co-workers, but she should work on tasks alone.

4

(R. 29.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely credible." (R. 30.) At step four, the ALJ concluded Plaintiff was not able to perform her past relevant work as a cashier, industrial cleaner, or driver. (R. 35.) At step five, the ALJ concluded, based on Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found Plaintiff capable of performing work as a paper finishing machine operator, a hand finisher, or an inspector. (R. 36.)

## IV. Plaintiff's Arguments

Plaintiff contends the ALJ erred by (A) improperly evaluating medical evidence; (B) finding Plaintiff's testimony less than entirely credible; and (C) using a flawed RFC in questioning the Vocational Expert ("VE"). The undersigned finds merit in Plaintiff's first and third arguments, and, therefore, recommends that the matter be remanded to the Commissioner.

### A. Evaluation of Medical Evidence

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description

of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3.[3] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)–(c), 416.927(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Acceptable medical sources—such as licensed physicians—are well defined in the regulations, and opinions of those sources are considered more probative than opinions of "other" sources—such as nurse practitioners. *See* 20 C.F.R. §§ 404.1513, 416.913. However, "an ALJ may, under the regulations, assign no or little weight to

---

[3] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15263 (Mar. 27, 2017).

6

a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." *Grant v. Astrue*, 574 F. Supp. 2d 559, 564 (E.D.N.C. 2008) (quoting *Wireman v. Barnhart*, No. 2:05CV00046, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006)).

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio v. Colvin,* 780 F.3d 632, 636 (4th Cir. 2015)). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

"With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06–03p, 2006 WL 2329939, at *3 (Aug. 9, 2009). Information from these "other medical sources" cannot be used to establish the existence of a medically determinable impairment, but it should be considered in assessing the severity of an impairment or its functional effects. *Id.* ("Opinions from these medical sources . . . are important

7

and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").

In determining the weight to be accorded "other medical sources," an ALJ should consider the following factors: (1) the length of time the source has known the individual and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides relevant evidence to support her opinion; (4) how well the source explains her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the source's opinion. SSR 06–03p, 2006 WL 2329939, at *4–5. Although "accepted medical sources" are considered the most qualified health care professionals, "an opinion from a medical source who is not an 'acceptable medical source'" may, in certain cases, "outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *5. Therefore, it is important that the ALJ not only *consider* these factors, but also *explain* "the weight given to opinions from these 'other sources' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

In *Argeris v. Colvin*, the court determined that an ALJ erred in discounting the weight of a treating physician's assistant ("PA"). *Argeris v. Colvin,* 195 F. Supp. 3d 812, 815–16 (E.D.N.C. 2016). The PA in that case had been treating the plaintiff

for several years under the supervision of a physician. *Id.* at 815. During the course of treatment, the plaintiff had a Physical Residual Functional Capacity Questionnaire completed by the PA and signed by the physician. *Id.* This court found that the ALJ erred when he assumed that the questionnaire was the opinion only of the PA and not of the physician. *Id.* at 815–16. This court reasoned: "[I]f the facts of treatment show the primary caregiver is a non-acceptable medical source, such as a nurse practitioner, and a doctor adopts the findings and information about the patient and is engaged in the treatment, the nurse practitioner's evaluation *becomes* the report of the doctor." *Id.* at 815 (quoting *Palmer v. Colvin*, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. Mar. 17, 2014)); *accord Mack v. Colvin*, No. 1:16CV90-CCE-JLW, 2016 WL 6996140, at *4 (M.D.N.C. Nov. 29, 2016), *memorandum and recommendation adopted by* No. 1:16CV90-CCE-JLW, ECF No. 21 (M.D.N.C. Dec. 21, 2016).

In the present case, Plaintiff makes two assignments of error regarding the ALJ's RFC determination. First, Plaintiff argues that the ALJ erred by improperly evaluating medical evidence. (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #18] at 14–18.) Specifically, Plaintiff alleges that the ALJ did not properly evaluate the opinion of Kathy Jo Asbury ("Ms. Asbury"), APRN.[4] (*Id.*) Plaintiff began seeing Ms. Asbury in

---

[4] Although the ALJ recognizes that Ms. Asbury is a family nurse practitioner (R. 32), he omits Ms. Asbury's advanced nursing licensure in his opinion. While the acronym is recorded differently throughout the record (ARPN and ARNP), Ms. Asbury does hold an advanced nursing license. (R. 1270, 1277.) The North Carolina Board of Nursing's website provides an explanation of the correct acronym and what it denotes: "'Advanced Practice Registered Nurse' (APRN) is an umbrella title for RNs who are Certified Registered Nurse Anesthetists, Certified Nurse Midwives, Clinical

January 2013 to treat, among others things, depression, and she continued to see Ms. Asbury for monthly follow-up treatment through November 2014. (R. 1035–83, 1176–95, 1224–82, 1291–99.) The Commissioner argues that the ALJ considered Ms. Asbury's opinion, "gave it no significant evidentiary weight," and appropriately explained why it was discredited. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #20] at 5–6.)

The Commissioner is correct that the ALJ mentioned a Mental Medical Source Statement ("MSS") and treatment notes for Plaintiff's September 8, 2014, visit to Ms. Asbury. (R. 32–33.) However, the ALJ's evaluation of Ms. Asbury's opinion focuses exclusively on these two pieces of evidence. (*Id.*) The ALJ summarized the MSS by saying: "[Ms. Asbury] essentially concluded the claimant [is] incapable of meeting the mental demands of competitive work on a sustained basis." (*Id.*) The ALJ then compared this summary to treatment notes completed by Ms. Asbury for Plaintiff's routine monthly visit that was conducted on the same day as the MSS. (R. 33.) Using the treatment notes for this single visit, the ALJ concluded that the MSS "was inconsistent with the other evidence of record," and therefore, assigned Ms. Asbury's opinion "no significant evidentiary weight." (*Id.*) The ALJ also noted that, as a nurse practitioner, Ms. Asbury was not an acceptable medical source and was thus considered "other evidence." (*Id.*)

Although the ALJ acknowledged Ms. Asbury's opinion, his cursory analysis was far from the six-factor evaluation set out in SSR 06–03p, 2006 WL 2329939, at

---

Nurse Specialists or Nurse Practitioners." *See* http://www.ncbon.com/dcp/i/licensurelisting-advanced-practice-registered-nurse-aprn-requirements (last visited Aug. 4, 2017).

*4–5. The ALJ's brief analysis of Ms. Asbury's opinion illustrates his lack of engagement with factors beyond the extent to which he addressed factors one and two. The ALJ never addresses *any* treatment notes outside of September 8, 2014, and thus does not appear to have analyzed the consistency of all of the evidence, whether Ms. Asbury specialized in the area in which she treated Plaintiff, or any other factors relating to the medical opinion. (R. 32–33.)

As to the length and frequency of contact, the ALJ's opinion would have the reader believe that Ms. Asbury only ever saw Plaintiff on September 8, 2014. (R. 32–33 ("Kathy Asbury, FNP, completed a questionnaire in September 2014 . . . Ms. Asbury reported on September 8, 2014[] that claimant denied any suicidal ideation.").) In fact, Plaintiff had been seeing Ms. Asbury on a monthly basis from January 2013–November 2014 and only ceased the monthly visits because of complications with her Medicaid coverage. (R. 1035–83, 1176–95, 1224–82, 1291–99.)

As to consistency, the ALJ does compare Ms. Asbury's treatment notes with the MSS from the same day, but he makes no mention of the other months' worth of treatment notes spanning back to January 2013. (R. 33.) While certain details of the MSS may appear inconsistent with certain details of the corresponding day's treatment notes, these inconsistencies shrink when the entire record of Ms. Asbury's medical treatment is taken as a whole. Ms. Asbury's notes consistently describe Plaintiff's struggle with her panic disorder: "She is struggling with many stressors in her life that exacerbate her anxiety and panic attacks" (R. 1054); "[A]nxiety is worsening recently . . . did some cutting on her left arm about 2 [months] ago " (R.

1241); "[S]till struggles with being in public and in large groups – stressors in her daily life" (R. 1247); "[N]erves are really bad this month . . . pulling her hair out . . . scratched her left wrist with a finger nail file" (R. 1224). When reviewing Ms. Asbury's treatment notes in their entirety, some of the MSS conclusions, such as Plaintiff's inability to "complet[e] a normal workday and workweek without interruptions from psychologically-based symptoms" (R. 33), appear consistent with her treatment notes. This does not mean that the MSS should have been assigned more weight, but it does mean that the ALJ should have more thoroughly explained his decision to assign so little weight to Ms. Asbury's opinion in light of this evidence.

The ALJ also neglected to address the possibility that a supervising physician adopted Ms. Asbury's opinions as his own. While the MSS was completed by Ms. Asbury, it was also co-signed by a supervising physician. (R. 1282.) Following the reasoning in *Argeris*, an opinion of a non-acceptable medical source may evolve into the opinion of a physician—an acceptable medical source—if that physician adopts the finding and is engaged with the treatment. *Argeris,* 195 F. Supp. 3d at 815. While it is not clear how engaged with the treatment this co-signing physician was, the ALJ made no mention of the additional signature on the MSS. (R. 32–33.)

Because the ALJ did not adequately analyze Ms. Asbury's opinion and there is a possibility that Ms. Asbury's opinion in the MSS was adopted by a supervising physician, the undersigned recommends that this matter be remanded to the Commissioner for further consideration of Ms. Asbury's opinions.

B.    Plaintiff's Credibility

Second, Plaintiff contends the ALJ insufficiently explained his finding that Plaintiff's testimony was less than entirely credible when evaluating Plaintiff's RFC. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18.) Specifically, Plaintiff contends that the ALJ's sole reason for finding Plaintiff less than entirely credible was the absence of objective findings to support Plaintiff's complaints of pain in the record. (*Id.*) The ALJ analyzed and explained the medical evidence of record that impugns Plaintiff's credibility at different points in his opinion, and therefore, the undersigned recommends that this assignment of error be overruled.

Plaintiff is correct that the ALJ must consider the entire case record because symptoms, such as pain, "sometime[s] suggest a greater severity of impairment than can be shown by objective medical evidence alone." (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18 (quoting SSR 96–7P, 1996 WL 374186, at *1 (July 2, 1996)).) Plaintiff alleges that the ALJ failed to consider *any* of the following factors in his ruling:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

13

(*Id.*) Despite Plaintiff's contentions, the ALJ considered and discussed these factors throughout his opinion.

In his analysis of Plaintiff's daily activities, the ALJ found that Plaintiff had "moderate restriction[s]" as she was able to perform light household chores, shop for groceries, prepare meals for herself, and care for family pets. (R. 28.) The ALJ highlighted that Plaintiff had been treated for her various symptoms, that they were well controlled with medication, and that Plaintiff had no side effects as a result of that medication. (R. 31–32.) On January 8, 2015, Plaintiff reported to her primary care provider, denied any joint pain or limitation of motion, and reported that her low-back pain was well controlled on her current medication. (R. 33.) For hand and wrist complaints, Plaintiff underwent carpal tunnel surgery and a palmar fasciectomy, which were without complication and allowed Plaintiff to cook and dust with improved strength in her hands. (R. 31–32.) The ALJ further took into account Plaintiff's physical limitations by cross-referencing multiple medical treatment notes from 2012–2015. Based upon this medical evidence, the ALJ concluded that Plaintiff is functionally limited but the evidence suggests that Plaintiff "may have been overstating her symptoms" and that Plaintiff's "allegation that she is incapable of *all* work activity [is not] credible." (R. 33–35 (emphasis added).) Therefore, the ALJ properly explained the credibility factors relevant to evaluating Plaintiff's symptoms. Accordingly, the undersigned recommends that Plaintiff's assignment of error regarding the analysis of her credibility be overruled.

C. VE Testimony

Finally, Plaintiff challenges the ALJ's determination that work exists in significant numbers in the national economy that Plaintiff could perform. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 19.) Specifically, Plaintiff contends that the RFC is incorrect, which in turn means that the VE's testimony relying on that RFC is flawed. (*Id.*) As discussed above, the ALJ did not adequately evaluate the medical evidence. Because the VE testified that Plaintiff would be precluded from performing any work were the ALJ to accept the limitations contained in Ms. Asbury's MSS, further consideration of the VE's testimony should be given on remand. (R. 68–69.)

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #17] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #19] be DENIED, and the Commissioner's decision be remanded for further consideration in accordance with this recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 18, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See,*

*e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 4th day of August 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge